J. Michael Robbins, Esq., ABA # 7606068
Attorney for Plaintiff Ahtna, Inc
406 W. Fireweed Ln., #103
Anchorage, AK  99503
P:  (907) 868-8204
F:  (907) 868-8265
mrobbins@ahtna.net

United States District Court

District of Alaska at Anchorage

|  |  |  |
|---|---|---|
| Ahtna, Inc., | ) | |
| | ) | |
|       Plaintiff, | ) | |
| | ) | |
| Vs. | ) | |
| | ) | |
| Frederick Heinz, | ) | Case No. 3:06-CV-00161 (TMB) |
| | ) | |
|       Defendant. | ) | |
| | ) | |

**PLAINTIFF AHTNA INC'S REPLY TO OPPOSITION
TO PLAINTIFF'S SUMMARY JUDGMENT MOTION**

### I.   INTRODUCTION

This case is about a Native corporation suing a trespasser who has refused to cooperate with repeated requests to cease using unauthorized trails and to remove vehicles, equipment and other junk that he has placed on Native lands. Ahtna owns the land pursuant to the Alaska Native Claims Settlement Act ("ANCSA"), 43 U.S.C.A. § 1601, et seq. Although the patented land is subject to a material site ROW in favor of the state, the court is asked to recognize Ahtna's right and title, as owner of the servient estate, to prevent trespass; the IC'd land has federally reserved §17(b) easements.  Defendant asserts adverse possession under AS 09.25.030 and rights to a subsistence fishwheel site under 43 U.S.C.A. § 1613(c)(1). Ahtna believes its lands are protected by the preemptive nature of ANCSA and specifically by 43 U.S.C.A. § 1636(d) which places Ahtna's land in the Alaska Land Bank and exempts it from taxation and adverse possession claims. Controlling case law includes *Donnelly v. United States*, 850 F.2d 1313 (9thCir. 1988) and *United States v. Lee*, 629 F.Supp. 721, 728-730 (D.Alaska 1985). Plaintiff Ahtna requests the court to recognize Ahtna's title and standing, deny the adverse possession and 14(c)(1) claims and enjoin further activities by Heinz on Ahtna lands.

## II.   STATEMENT OF LAW – Summary Judgment

**A.   Summary Judgment is Appropriate.**  Rule 56(c) provides that summary judgment is appropriate "...if the pleadings, she discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." In 1986, the United States Supreme Court, in Celotex Corp. v. Catrett, 477 U.S. 317, 327, 106 S.Ct. 2548,2555, 91 L.Ed.2d 265 (1986) determined that motions for summary judgment upon proper showings of the lack of a genuine, triable issue of material fact "... is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." 477 U.S. at 327, 106 S.Ct. at 2555; *Freeman v. Arpaio,* 125 F.3d 732, 735 (9th Cir.1997).

**B.   Heinz Has Presented No Genuine Issues of Material Fact.**  The summary judgment motion allows the persons opposing claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual or legal basis. *Id.,* 477 U.S. at 328, 106 S.Ct. at 2555.  Accepting all statements in affidavits and exhibits submitted by Heinz in Opposition to the pending motion, Heinz states no genuine, triable issue of material fact that would preclude summary judgment in this case.

**C.   ANCSA Should be Construed Liberally in Favor of Ahtna.**[1]  This case involves statutory construction of the Alaska Native Claims Settlement Act, 43 U.S.C.A. §1601, *et seq.*  The basic Indian law canons of construction require that treaties, agreements, statutes, and executive orders be liberally construed in favor of the Indians; and all ambiguities are to be resolved in favor of the Indians.[2]

## III.   STATEMENT OF FACTS – Land Status

**A.   Ahtna's Ownership.**   In the 1960's these lands were public land of the United States and subject to Native land claims.[3]   In 1965, BLM granted a material site right of way to the State of

---

[1] United States v. Lee, 629 F.Supp. 721, 728-729 (D.Alaska 1985)

[2] COHEN'S HANDBOOK OF FEDERAL INDIAN LAW (2005 ed.), §2.2; *City of Yakima v. Confederated Tribes & Bands of Yakima Indian Nation,* 502 U.S. 251, 269 (1992)

[3] Native land claims date back to the Treaty of Cession of 1867.  Various enactments have sought to protect Native claims including: section 4 of the Statehood Act, Act of July 7, 1958, Pub.L. No. 85-508, 72 Stat. 339, as amended, 73 Stat. 141. 48 U.S.C. prec. 21 note; the public land laws and Interior Department regulations *(e.g.,* 43 CFR § 2563.1-1(a)(6) & (8)) . The Alaska District Court provides a review of the history of Native Land Claims in *United States v. Atlantic Richfield Company,* 435 F.Supp. 1008, 1014-1019 (D.Alaska 1977).

Alaska under provisions of the Federal Highway Act, 23 U.S.C.A. §317.[4] As Native land claims were being filed in public records throughout the state creating a "land freeze" in Alaska, Secretary of the Interior Morris Udall formalized the freeze by issuing Public Land Order 4582 withdrawing all public land in Alaska from all forms of appropriation under the public land laws until settlement of Native Land Claims.[5]

In 1971, Congress enacted ANCSA[6] which settled Native land claims[7] and included a statutory withdrawal of lands for Native villages identified in § 11.[8] Of relevance to this proceeding is §11(a) which withdrew from all forms of appropriation under the public land laws the core township and contiguous townships enclosing Gakona Village[9] and other Native villages in Alaska. 43 U.S.C.A. §1610(a)(1). In addition, the State was precluded from creating third-party interests in lands (trespass claims such as those asserted by Heinz do not qualify as third-party interests[10]). 43 U.S.C.A. §1610(a)(2).

Ahtna/Gakona was mandated by § 12(a) to select all available land within its core withdrawal area.[11] Conveyances of unsurveyed lands were made by Interim Conveyance; surveyed parcels were

---

[4] Heinz Ex. B is a partial copy of the State's material site ROW (omitted is the survey). Ahtna's IC 564 and Pat. 50-83-0011 are both made subject to the ROW (A-062221).Ahtna Compl Ex. 1; Ahtna Exhibit 13.

[5] The land freeze was made official in Public Land Order No. 4582, issued January 12, 1969, which read in part:

Subject to valid existing rights, and subject to the conditions hereinafter set forth, all public lands in Alaska which are unreserved or which would otherwise become unreserved prior to the expiration of this order, are hereby withdrawn from all forms of appropriation and disposition under the public land laws (except locations for metalliferous minerals), including selection by the State of Alaska pursuant to the Alaska Statehood Act (72 Stat. 339), and from leasing under the Mineral Leasing Act of February 25, 1920, 41 Stat. 437; 30 U.S.C. 181, et seq., as amended, and reserved under the jurisdiction of the Secretary of the Interior for the determination and protection of the rights of the Native Aleuts, Eskimos and Indians of Alaska.

[6] Alaska Native Claims Settlement Act ("ANCSA"), 43 U.S.C.A. § 1601, *et seq.*

[7] *United States v. Atlantic Richfield Co.*, 435 F.Supp at 1021-1022.

[8] 43 U.S.C.A. § 1610(a).

[9] 43 U.S.C.A. §1610(b)(1) lists Gakona, Copper River. Gakona merged with Ahtna in 1980.

[10] See discussion, *infra*, pp. 6-7.

[11] 43 U.S.C.A. § 1610(a).

conveyed by patent.[12] The IC and patent in this case was issued subject to the State's material site right-of-way ("ROW") A-062221, which reservation was made in accordance with § 14(g)[13]

Plaintiff Ahtna, Inc., as successor in interest to Gakona Village[14], received conveyance of the lands subject to the material site by Interim Conveyance, IC 564[15] and Pat. No. 50-83-0011, dated Oct. 27, 1982.[16] These documents establish Ahtna's ownership of the land where the Heinz trespass has and is occurring.

     **B.**    **ANCSA Easement Provisions.** In his Opposition,[17] Heinz refers to the 17(b) easement,[18] EIN 11a C5, L (reserved in both the IC and the patent), that is described as being "an existing road from mile 4 Tok Cutoff, ... easterly to site EIN 11b C5, L on the right bank of the Copper River in section 9."[19] A larger scale survey showing the centerline of the road easement clearly demonstrates that EIN11a C5, L does not provide access to Mr. Heinz Lot 2 parcel.[20] This is submitted to clarify Heinz Ex. B.

---

[12] Ahtna Complaint Exhibit 1 is IC 564; Ahtna Exhibit 13 is patent 50-83-0011.

[13] Section 14(g), 43 U.S.C.A. § 1614(g), contains the following relevant provisions:

> All conveyances made pursuant to this chapter shall be subject to valid existing rights. Where, prior to patent of any land or minerals under this chapter, a ... right-of-way ... has been issued for the ... minerals covered under such patent, the patent shall contain provisions making it subject to the ... right-of-way ... and the right of the ... grantee to the complete enjoyment of all rights, privileges, and benefits thereby granted to him. Upon issuance of the patent, the patentee shall succeed and become entitled to any and all interests of the ... United States as ... grantor ... in any such ... rights-of-way ... covering the estate patented. ... The administration of such ... right-of-way ... shall continue to be by the ... United States, unless the agency responsible for administration waives administration. ...

[14] Ahtna, Inc merged with seven of its village corporations in 1980 that included the Gakona village corporation.

[15] Ahtna Complaint Exhibit 1, p. 5.

[16] Counsel of Ahtna, Inc inadvertently failed to include the patent showing conveyance to Ahtna of the lands encompassed in the State's ROW. That patent, recorded at Book 14, page 735, Chitina Recording District, is attached as Ahtna Exhibit 13, p. 3.

[17] **HEINZ OPP. SJ., at 1, 3.**

[18] These easements are reserved under authority §17(b) of ANCSA, 43 U.S.C.A. § 1616(b).

[19] Ahtna Compl. Ex. 1, p. 4; Ex. 13, p. 2.

[20] Ahtna Exhibit 14. This document was provided to Heinz through initial disclosures as AHTNA/HEINZ 80. It is from a survey prepared by Jack L. Phillips RLS.

Site easement EIN 11b C5, L, also relied on by Heinz, is a one-acre site easement for temporary uses limited to 24 hour stays.[21] Even Heinz recognizes that a fish wheel is not an authorized use under this easement reservation.[22]

**C.    State Material Site ROW A-062221.**[23] The material site ROW was issued to the State DOTPF pursuant to 23 U.S.C.A. § 317 of the Federal Highway Act. This section places administrative jurisdiction over the grant in the Bureau of Land Management ("BLM"), Interior Department.[24] The grantee must comply with the terms and conditions (see Heinz Ex. A, p. 4) and the provisions of 43 CFR 2234.[25] The ROW grant provides that there is no rental due for materials used.[26]

**D.    Heinz Lot 2.** Heinz acquired Lot 2, situated in the middle of the ROW, under the federal Homesite Act, 43 USCA §687a.[27] Heinz' defense to the trespass claim is that he began use of the disputed land in either 1965 or 1967 claiming that he used some of the land within the State's material site ROW for storage of trucks and other items. A review of his deed for Lot 2 shows that it was a 5-acre

---

[21] Complaint Ex. 1, p. 3-4; Ahtna Exhibit 13, pp. 1-2. The temporary uses include parking, camping and loading or unloading – not installation of a fish wheel. Such uses are limited to 24 hours.

[22] Heinz argues in the alternative that since his fish wheel site is on the BLM easement, then it's up to BLM to enforce the use of the easement. **HEINZ OPP. SJ, at 7.** Heinz cites no theory of law to support his contention and presumably none exists since the land belongs to Ahtna and it is not a use that Ahtna allows. As a land owner, Ahtna has to right to allow whatever lawful use its wants. *See* discussion, *infra*, 6-7.

[23] Heinz Ex. A.

[24] *Id.*, §317(a).

[25] 43 CFR § 2234 provided in part:

> A subpart of 'Part 2230- Special Uses'.
>
> '(a) Nature of interest granted; settlement of right-of-way; rights of ingress and egress. (1) No interest granted by the regulations in this part shall give the holder thereof any estate of any kind in fee in the lands. The interest granted shall consist of an easement, license, or permit * * *; no interest shall be greater than a permit revocable at the discretion of the authorized officer * * *.'

*Southern Idaho Conference Asso. Of Seventh Day Adventists v. United States*, 418 F.2d 411, 414 n.6 (9th Cir. 1969)

[26] Heinz Ex. A, p.1: Rental: N/A.

[27] A copy of Heinz' patent is attached as Ahtna Ex. 15.

homesite located in 1965 and patented to him in 1972 by U. S. Patent No. 50-73-0026.[28] On its face, Heinz' patent was issued subject to the State material site ROW.[29]

E. **Heinz Fish Wheel.** Heinz claims that he has used a fish wheel since 1967.[30] Heinz claims he has received permits (he thinks) from the state to operate a fish wheel. Heinz finally claims that he uses land in the BLM site easement although he knows this is not an authorized use.

## IV.   ARGUMENT

A. **Heinz claims title by adverse possession beginning in 1967[31] although land users who are mere trespassers acquire no rights.[32]**

   1. **Adverse Possession is Preempted by ANCSA[33]**

Congress included specific protections for third-party interests under ANCSA by listing those interests in §14(c)(1) and (g) and § 22(b) and (c). According to Judge Fitzgerald, any claim that is not specifically addressed in ANCSA by Congress should not be allowed. As stated by Judge Fitzgerald in *United States v. Lee*:

> Based on the detail with which ANCSA was drafted and Congress' intention to provide a certain and all-encompassing resolution of Alaska native land claims, I agree with the assessment of the United States Court of Claims in Cape Fox Corp. v. United States, 4 Cl.Ct. 223 (1983):
>
> The ANCSA is comprehensive. It sets out with particularity the rights of the United States, the natives, the State, and third parties, with respect to the lands and revenues to be distributed, and established a time frame in which these rights and duties are to attach.
>
> Since Congress "spoke directly" in ANCSA concerning individuals' rights to assert claims to ANCSA-conveyance lands and established "a self-consciously comprehensive program" in ANCSA for determining such rights, **I conclude, based upon City of Milwaukee, that Congress intended ANCSA to "occupy the field" in this area and to preempt any common-**

---

[28] Ahtna Ex. 15, pp. 2-3. This is a portion of a plat and Heinz case file abstract showing date of location of 7/19/1965.

[29] *Ibid*, p. 1, ¶ 3.

[30] **HEINZ OPP. SJ, at 1, 6.**

[31] Heinz **OPPOSITION TO PLAINTIFF'S SUMMARY JUDGMENT MOTION ("HEINZ OPP. SJ, at _"), at 2;** Heinz Aff., ¶ 7. Heinz was establishing his occupancy requirements under the Homesite law for the identical ground from 1965 through 1972. He clearly is attempting to double-dip.

[32] *Donnelly v. United States,* 850 F.2d 1313, 1320 (9thCir. 1988).

[33] *United States v. Lee*, 629 F.Supp. 721, 728-730 (D.Alaska 1985); *see Barnhart v. Peabody Coal Co.,* 537 U.S. 149, 123 S.Ct. 748 (2003).

> **law theories or other statutory claims that individuals might assert.** See City of Milwaukee, 451 U.S. at 314, 319, 101 S.Ct. at 1793-94. Given the extensive set of provisions in ANCSA delineating the rights of individual claimants to ANCSA-conveyance lands, any attempt to supplement these provisions with common-law remedies, such as the constructive-trust theory advanced by the plaintiffs, would represent an attempt to alter the comprehensive legislative scheme adopted by Congress in ANCSA, rather than to "fill a gap" that Congress has not occupied, and would therefore be an impermissible application of federal common law. See id. at 324 & n. 18, 101 S.Ct. at 1796 & n. 18. Thus, I dismiss the plaintiffs' common-law claims against Eklutna and Cook Inlet Region, and hold that the plaintiffs' claims seeking to recover title to the disputed lands from these corporations must be expressly based upon provisions contained in ANCSA.

629 F.Supp. 721, 729-730 (D.Alaska 1985). The Ninth Circuit Court of Appeals in *Donnelly* (cited by Heinz Opp. SJ at 6) agreed with Judge Fitzgerald:

> As the district court noted, § 14(c)(1) could not operate as "a sort of amnesty provision extending rights to individuals who are merely trespassers, failed homesteaders, or land users without any vested rights prior to December 1, 1971," because there was no indication of congressional intent to override the established principle that individuals could obtain no rights to withdrawn lands. See United States v. Consolidated Mines and Smelting Co., 455 F.2d 432, 444 (9th Cir.1971). Moreover, the congressional intent to provide a "just and fair settlement" of native land claims is inconsistent with an interpretation of § 14(c)(1) that would reduce the land patented to native corporations in favor of trespassers.

850 F.2d at 1320. Based on the precedence in this Court, adverse possession claims, being statutory, should be disallowed as contrary to the public policy and clarity announced by Congress in ANCSA. Since Heinz asserts that his adverse possession was initiated in 1967, under the rulings in *Donnelly* and *Lee* that claim was preempted by ANCSA and can not be asserted now.[34]

    **2.**    **Adverse Possession is barred by 43 U.S.C.A. § 1636(d).** Heinz adverse possession claim also is statutorily barred since Native lands conveyed pursuant to ANCSA are included automatically into the Alaska Land Bank. 43 U.S.C.A. §1636(d).[35] All lands or interests in land

---

[34] Id.; *Lee*, 629 F.Supp. at 729-730.

[35] The applicable section provides in relevant part:

(d) Automatic protections for lands conveyed pursuant to ANCSA

(1)(A) Notwithstanding any other provision of law or doctrine of equity, **all** land and interests in land in Alaska conveyed by the Federal Government pursuant to the Alaska Native Claims Settlement Act to a Native individual or Native Corporation ... shall be exempt, so long as such land and interests are not developed or leased or sold to third parties from--

conveyed by the Federal Government pursuant to ANCSA are exempt from adverse possession so long as such land or interests are not developed.[36] Heinz claims the lands are "developed" because of the State's material site.[37] However, a careful analysis of Congress' statutory definition of "developed" establishes that these lands are not developed as a matter of law and that adverse possession is unavailable to trespassers such as Heinz. The Alaska Land Bank provisions of 43 U.S.C.A. §1636(d)(2) contain the following definition:

> (A) **For purposes of this subsection, the term--**
>
> (i) **"Developed" means a purposeful modification of land, or an interest in land, from its original state that effectuates a condition of gainful and productive present use without further substantial** modification. Any such modification shall be performed **by the Native** individual or Native Corporation. **Surveying, construction of roads,** providing utilities, or other similar actions, which are normally considered to be component parts of the development process but do not create the condition described in the preceding sentence, **shall not constitute a developed state within the meaning of this clause.** In order to terminate the exemptions listed in paragraph (1), land, or an interest in land, must be developed for purposes other than exploration, and the exemptions will be terminated only with respect to the smallest practicable tract actually used in the developed state. **Any lands previously developed by third-party trespassers shall not be considered to have been developed.**

43 U.S.C.A. 1636(d)(2) (emphasis added). In Ahtna's case the land was statutorily withdrawn by §11 of ANCSA, 43 U.S.C.A. §1610, for selection and conveyance to the Native Village of Gakona.[38] The State of Alaska had and has a ROW for material to be used in the building and maintenance of a federal highway which ROW was reserved in the federal Interim Conveyance and Patent issued to Plaintiff.[39] Therefore, since the conveyances were by the Federal Government pursuant to ANCSA, the lands are automatically included in the Land Bank and exempted from adverse possession claims. Further, Ahtna cannot be said to have developed the site since none of the material site development was done by or

---

(i) adverse possession and similar claims based upon estoppel;

[36] 43 U.S.C.A. §1636(d)(1)(A) and (1)(A)(i).

[37] **HEINZ OPP. SJ, at 2-3.**

[38] Ahtna, Inc is the successor in interest of Gakona by virtue of a merger in 1980 between Ahtna, Inc, the regional corporation, and seven village corporations including Gakona. See 43 U.S.C.A. §1627 and §§1610 and 1641(b).

[39] Complaint Ex. 1, pp. 5-6 and Ex. 13, p. 3.

under the direction of Ahtna. Surveys and development pre-existing ANCSA are excluded from the definition of development.[40]

In his argument, Heinz does not dispute the fact that the development was not performed by Ahtna, but rather by the State under a federal highway grant pre-existing ANCSA. The land already was in this condition when it was conveyed to Ahtna. Heinz also ignores – but does not dispute – the fact that the survey was NOT performed by Plaintiff Native Corporation but by the government in accordance with federal law.[41] Heinz then overlooks the statutory provision – while not disputing the fact – that a survey and road construction "shall not constitute a developed state within the meaning of this clause." Finally, defendant Heinz declines to recognize that trespassers such as him cannot rely on their own previous actions to create development.[42] To allow Heinz to do so undermines the integrity of the Act.[43] Heinz analysis of the Alaska Land Bank provision should be rejected.

The State of Alaska also has adopted AS 29.45.030(m) seeking to clarify the provisions of 43 U.S.C.A. 1636(d) for the purpose of determining property exempt from municipal taxing programs.[44] Although federal courts are not bound by state law in ANCSA cases, the Alaska legislature adopted a

---

[40] 43 U.S.C.A. 1636(d)(2)(A)(i) ("Any such modification **shall be performed by the ... Native Corporation.**").

[41] Ahtna would note that the survey was not intended to create a subdivision or make the land salable for residential or business development. *See Kenai Pen. Bor. v. Cook Inlet Region, Inc.*, 807 P.2d 487, 498 (Alaska 1991), AS 29.45.030(m) and discussion *infra* at 9.

[42] In his response to Interrogatory No. 5 (adverse possession), Heinz says the property has and is developed as a gravel pit and equipment storage area. (Heinz Exhibit A, p. 4) Yet the gravel pit belongs to the State and Heinz has produced no documents showing that anything on the disputed portion of the property belongs to him. In addition, whatever he placed there is in trespass and is legally precluded as proof of adverse possession. 43 U.S.C.A. § 1636(d)(2)(A)(i). Discussion *supra* at 5-6.

[43] As Judge Fitzgerald observed:

> In light of Congress' desire to provide a complete, final, and certain resolution of native land claims in ANCSA and to minimize the need for litigation, it seems unlikely that Congress would have authorized large-scale conveyances of lands to native corporations without carefully delineating the rights of other parties to assert claims to those lands. Allowing private parties to claim ownership to ANCSA-conveyance lands under a host of common-law theories would enable them to undermine the ANCSA settlement and to prevent native corporations from fully enjoying the fruits of the settlement for many years.

*Lee*, 629 F.Supp. at 728.

[44] AS 29.45.030(m).

definition of "developed" that was almost identical to ANCSA, restating the exemption as limited to the smallest practicable tract of the property actually used in the developed state.[45]

In *Kenai Pen. Bor. v. Cook Inlet Region, Inc.*, 807 P.2d 487 (Alaska 1991), the Alaska Supreme Court considered three surveyed and subdivided parcels owned by CIRI. The Court determined that surveys and road construction were not the criteria and instead looked at a subdivided parcel in "a legal and a practical sense" finding the parcel would have to be subdivided with a recorded plat and ready to sell in small practical lot sizes before it would be considered developed.[46] This appears to be consistent with the ANCSA intent.

Ahtna submits that the lands lying outside of the state's material site ROW also are not developed within the context of the Alaska Land Bank provisions. Therefore, Heinz claims of a trail and fishwheel site also are barred by 43 U.S.C.A.§1636(d)(A)(i) and the reasoning of Judge Fitzgerald in *Lee*[47] and the Ninth Circuit in *Donnelly*.[48]

**B.   Heinz argument that only the State has control of his trespass activities since the lands are subject to a material site ROW in favor of the State[49] fails as well.**

**1.   Ahtna is the owner of the land that is subject to the State's material site ROW.**

The Restatement Property (Servitudes) teaches that Ahtna's land is the servient estate and the ROW a servitude. Therefore, Ahtna, as the servient estate owner, is entitled to make any use of the servient estate that does not unreasonably interfere with enjoyment of the servitude.[50] To allow the State

---

[45] AS 29.45.030(m)(1).

[46] *Kenai Pen. Bor.*, 807 P.2d at 498.

[47] 629 F.Supp. at 728-730.

[48] 850 F.2d at 1320-1321.

[49] HEINZ OPP.SJ, at pp. 4-5. Heinz asserts that his use of the material site is controlled by the state until Ahtna (or BLM) cancels the material site. Id., at 4 (mid-page).

Heinz makes a similar argument about the federal government with respect to his fish wheel site which he admits, more or less, is in violation of the BLM site easement. HEINZ OPP.SJ, at 6-7.

[50] RESTATEMENT THIRD, PROPERTY (SERVITUDES), §4.9:

> Except as limited by the terms of the servitude determined under § 4.1`, the holder of the servient estate is entitled to make any use of the servient estate that does not unreasonably interfere with enjoyment of the servitude.

Section 4.1 provides the rule for interpreting a servitude that could be useful here:

to control use of Ahtna's lands by third-parties would be contrary to the black-letter law of servitudes. Such a result also would be contrary to the public policy expressed by Congress in passing ANCSA that land be conveyed rapidly to the Natives and that they have maximum participation:

> §2(b): The settlement should be accomplished rapidly, with certainty, in conformity with the real economic and social needs of Natives, without litigation, with maximum participation by Natives in decisions affecting their rights and property ...
>
> §11(a):  [Native] lands are withdrawn, subject to valid existing rights, from all forms of appropriation under the public land laws, including the mining and mineral leasing laws, and from selection under the Alaska Statehood Act...

43 U.S.C.A. § 1601(b) and § 1610(a).

Third-party occupancy rights that can be allowed under ANCSA include: "a primary place of residence, a primary place of business, a subsistence campsite, or as headquarters for reindeer husbandry."[51] None of these rights are claimed by Heinz. Even the fish wheel site did not involve construction of a campsite by Mr. Heinz.[52]

Other valid, existing third-party rights preserved by ANCSA are those listed in § 14(g) including: lease, contract, permit, right-of-way, or easement that has been issued for surface or minerals.[53] These rights are specifically identified in the patent or IC by express reservation with the Native corporation succeeding to the rights, title and interests of the United States or state.[54] Section 22(b) and (c) also provide for third-party rights but these are determined by the United States.[55] No reservation pertaining to Mr. Heinz is found in either the IC or the patent.

---

(1) A servitude should be interpreted to give effect to the intention of the parties ascertained from the language used in the instrument, or the circumstances surrounding creation of the servitude, and to carry out the purpose for which it was created.

(2) Unless the purpose for which the servitude is created violates public policy, and unless contrary to the intent of the parties, a servitude should be interpreted to avoid violating public policy. Among reasonable interpretations, that which is more consonant with public policy should be preferred.

RESTATEMENT THIRD, PROPERTY (SERVITUDES), § 4.1.

[51] 43 U.S.C.A. 1613(c)(1).

[52] Nowhere in his affidavit does he allege that he actually camps out at his fish wheel or built a camp there. Instead Heinz says the fishwheel was in the water, not on land. *See* Heinz Aff. ¶ 2 and 4.

[53] 43 U.S.C.A. §1613(g).

[54] Id.

[55] See discussion in *Lee,* 629 F.Supp. at 728-733.

Ahtna submits as the legal owner of the servient estate that it has the right to prevent trespasses from occurring on its land, as these uses are not permitted under the state's ROW. And regardless of the facts as alleged by Heinz, none support a claim or right under either § 14(c)(1) or § 14(g).[56] Heinz' actions are contrary to the intent and purpose of ANCSA and should be stopped for these reasons as well.

2. **Next, assuming *arguendo* that Heinz is legally correct that the Government retains administrative jurisdiction over uses of Ahtna land within the material site ROW, Heinz' argument fails under State and Federal law.**[57]

a. **State law bars Adverse Possession against the government.** It is undisputed that the material ROW was granted to the state while the land was owned by the federal government. Heinz adverse possession claim therefore is expressly barred by State law:

> No prescription or statue of limitations runs against the title or interest of the state to land under the jurisdiction of the state. No title or interest to land under the jurisdiction of the state may be acquired by adverse possession or prescription, or in any other manner except by conveyance from the state.

AS 38.95.010. Heinz could not have initiated an adverse possession claim so long as the state remains the grantee of the ROW.[58]

b. **Federal law Bars Adverse Possession against the government.** In 1967, when Heinz asserts that his "adverse" possession began, the federal government owned the lands. Heinz could not have initiated a lawful adverse possession claim since adverse possession is not available against the United States. 28 U.S.C. § 2409a(n); *United States v. California*, 332 U.S. 19, 40, 67 S.Ct. 1658, 1668-1669, 91 L.Ed. 1889 (1947); *United States v. Vasaraj*s, 908 F.2d 443, 446-447 (9th Cir. 1990); *see* 48 U.S.C.A. §1489.

In addition, the issuance of the ROW to the State withdrew the land in USS 5560 from all forms of appropriation under the public land laws including entry or location under any mining laws. *United States v. Schaub*, 103 F.Supp. 873, 13 Alaska 640 (1952), *affirmed* 207 F.2d 325, 14 Alaska 412. Thus, as a matter of public land law, Heinz could not initiate an interest by location under any existing public

---

[56] To Ahtna's knowledge Heinz is not asserting a claim under § 22(b) or (c) although subsection (b) makes clear that trespassers acquire no rights.

[57] **HEINZ OPP. SJ, at 3-5.**

[58] The state, as grantee of the ROW was without authority to grant such an interest as a matter of law. 43 CFR § 2234.1-3(a) (1966?).

Ahtna, Inc. v. Heinz, Case No. 06-CV-161 (TMB)
PLAINTIFF AHTNA, INC'S REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
Page 12 of 17

land or mining law since the land was withdrawn and an illegal entry is null and void *ab initio*.[59] He therefore could not have initiated an adverse possession claim as a matter of law either in trespass on federal lands or on withdrawn lands.

Heinz relies on *Southern Idaho Conference Asso. Of Seventh Day Adventists v. United States*, 418 F.2d 411 (9th Cir. 1969), for the proposition that the ROW remains in effect until cancelled.[60] Ahtna does not dispute this statement of the case law from Idaho given the extensive history of use by the Idaho Department of Transportation. *Seventh Day Adventists* also stands for the proposition that all the rights not expressly stated in the easement reservation were conveyed by the patent to Ahtna[61] and that the United States retained rights in the easement after land was conveyed to Idaho since it issued the ROW.[62] In other words, the government still had an administrative interest and Heinz could not acquire an adverse interest.

Heinz next cites *Tetlin Native Corp. v. State*, 759 P.2d 528 (Alaska 1988) for the proposition that Ahtna as successor in interest to the federal government has the power to terminate the material site easement if the state abandons or discontinues the use for which the site was granted.[63] Ahtna does not dispute this premise either. Again, Ahtna does not have to sue the State or terminate the ROW or file an action against the United States in order to remedy Heinz' trespass.[64] Heinz is the person trespassing and he was put on notice by both the State and Ahtna.[65] Ahtna owns the fee title and has the right to sue trespassers.

3. **Assuming, *arguendo*, that Heinz can Proceed on an Adverse Possession theory, then Heinz' Trespass Does Not Satisfy Adverse Possession under AS 09.10.030.**

To review the facts available to Heinz in support of adverse possession:

---

[59] *See, Shiny Rock Min. Corp v. United States*, 825 F.2d 216, 219 (9th Cir. 1987); *United States v. Consolidated Mines and Smelting Co.*, 455 F.2d 432, 444 (9th Cir.1971).

[60] **HEINZ OPP. SJ, at 4.**

[61] *Southern Idaho Conference Asso. Of Seventh Day Adventists v. United States*, 418 F.2d at 416. Restatement Third, Property (Servitudes), § 4.9.

[62] Id., at 415-416; *see* Restatement Third, Property (Servitudes), § 4.9.

[63] **HEINZ OPP. SJ, at 4.**

[64] Defendant's Opposition brief is the first mention made by Heinz of possible affirmative defenses of failure to join necessary parties. Heinz has also admitted that Ahtna has stated a cause of action. Defendant's Ex. A, p.1, to Defendant's Motion to Withdraw Admissions. Waiver is certainly an appropriate finding under FRCP 12(b).

[65] Compl. Exs. 5 and 6; Aff. K. Martin, ¶¶ 9 and 13; Compl. ¶ 9 and Answer, ¶ 9.

- stored business vehicles, mining equipment and scrap metal since 1967
- put 55 gallon barrels (empty) on the property
- parked bus equipment from 1972 until 1980 when the business was sold - interrupted
- used the 5-mile pit to access his fishwheel
- located his fishwheel in the water (not on land)
- cleaned up ¼ acre "tar pit" circa 1967 – non-continuous
- filled potholes, put in culvert in 1969 – non-continuous
- used the pit in 1967 for a lumber business – non-continuous
- stored well drilling equipment until four years ago – interrupted

Other facts gleaned from the Heinz affidavit show much activity was done by third-parties:

- scrap metal, cat tracks, old equipment, old cables, old dump trucks, and old oil drums and grease boxes were pre-existing Heinz' use
- State constructed a trail Heinz uses
- State uses the bus turnaround
- Pit is actively used from 1982 to present by State and its contractors

Heinz claims that he meets the 10-year limitation period under AS 09.10.30 for adverse possession citing criteria under *Vezey v. Green*.[66] The court stated one version of the rule as follows:

> in order to acquire title by adverse possession, the claimant must prove, by clear and convincing evidence, ... that for the statutory period his use of the land was continuous, open and notorious, exclusive and hostile to the true owner.

If Heinz is allowed to proceed on an adverse possession theory (which Ahtna believes barred by 43 U.S.C.A. § 1646(d)) and other provisions previously cited), each criterion must be met by clear and convincing evidence. Accepting his affidavit as true, he fails to meet any of these criteria.

    **a.**    **Heinz use was not continuous use.** First, the uses claimed – parking equipment, vehicles and scrap metal – do not constitute a type of use, taken alone, that supports adverse possession. By their nature, vehicles and equipment are movable. The use must be of a permanent nature, i.e., living there. In *Vezey* the claimant built a house, gardened, and resided on the parcel. All the other storage and parking activities occurred before Ahtna received its title. And the continuous possession criterion is negated by his confirmation that the state and its contractors have used the site continuously from 1982 to the present. Aff. Heinz, ¶ 11.[67]

    **b.**    **Heinz use was not open and notorious or hostile.** Next, based on the affidavits filed by Mr. Heinz, it is apparent that he failed to act as if he or she were the owner and not merely one acting

---

[66] Vezey v. Green 35 P.3d 14, 20 (Alaska 2001).

[67] *Vezey*, at 35 P.3d at 20; *Snook*, 12 P.3d at 781.

with the permission of the owner.[68] For instance, in Heinz affidavit he does not claim that the State gave him title to any part of the material site. See Aff. Heinz, *passim.*

The Herrman affidavit shows only that no one from the state ever asked Heinz to move except that "Tom Young, a State employee," told Heinz he would have to move his stuff if anyone needed to get to that area. Aff. Herrman, ¶3. Thus, the only facts offered in support of the hostile possession element appears to be that the state did not tell him to move his equipment and vehicles unless someone needed to get to that area.

In fact, the gratuitous nature of Heinz' use of the State material site is underscored by the 2003 letter from Shari Howard, Right-of Way Agent for DOTPF. Complaint Ex. 5. As the State's representative, Ms. Howard notes that none of the access routes have been legalized and that Mr. Heinz is to move his personal property back within the lines of his patented property.[69] Nothing said in the letter from DOTPF even remotely suggests that Heinz had permission from the State to adversely possess land in the material site or that any road was built quid pro quo for him. To the contrary the evidence of record (relied on both by Ahtna and by Mr. Heinz) supports the conclusion that Mr. Heinz was in deed in trespass.

And if Heinz was present on the site with the consent of the State, that consent was clearly revoked in 2003 by virtue the letter from DOT. Thus Heinz was in trespass unquestionably from January 19, 2003 to date.

  c.   **Heinz use was not exclusive.** Nor was Heinz using the pit to the exclusion of others.[70] Heinz in fact attests that the pit was and is in active use by the State and its contractors (who presumably use trucks and heavy equipment associated with operation of a gravel pit). Therefore Heinz does not meet the exclusivity element of an adverse possession defense.

**4. Heinz claims the fishwheel site by virtue of 14(c)(1) is invalid.[71]**

Ahtna declines to recognize the validity of the Heinz claim for a fishwheel site under §14(c)(1). This is within the right of Ahtna and other Native corporations as the Ninth Circuit Court made clear in *Donnelly v. United States,* 850 F.2d 1313, 1320 ((thCir.1988):

---

[68] *Id.*; *Snook v. Bowers,* 12 P.3d 771, 781-782 (Alaska 2000). This addresses the "hostile" requirement.

[69] Notable quotes from Ms. Howard:

"The accesses constructed in this pit, Mr. Heinz, have not be legalized to my knowledge…" and

"…In the past, your personal property (various vehicles) have been parked outside the boundaries of your patented property. Please make sure, in the future, that your personal property is on your property."

[70] Heinz Aff., ¶ 11.
[71] Ahtna relies on prior discussion, *supra* at 6-7.

As the district court [Fitzgerald, J.] noted, § 14(c)(1) could not operate as "a sort of amnesty provision extending rights to individuals who are merely trespassers, failed homesteaders, or land users without any vested rights prior to December 1, 1971," because there was no indication of congressional intent to override the established principle that individuals could obtain no rights to withdrawn lands. See United States v. Consolidated Mines and Smelting Co., 455 F.2d 432, 444 (9th Cir.1971). Moreover, the congressional intent to provide a "just and fair settlement" of native land claims is inconsistent with an interpretation of § 14(c)(1) that would reduce the land patented to native corporations in favor of trespassers.

Section 14(c)(1) does not list "subsistence fishwheel campsite" as a type of third-party right. First, Heinz does not attest to actually camping at the site of his fish wheel (to which he drove from his house located less than a mile away). Second, his claim is mooted by the BLM site easement which opens the site to the public and limits use to no more than 24 hours.

Based on *Donnelly* and *Lee*, on Ahtna's intent not to recognize a fishwheel as a qualifying use under §14(c)(1), and on the superseding site easement EIN 11bC5, the fishwheel claim of Heinz should be rejected and summary judgment entered in Ahtna's favor on this issue as well.

## V.   SUMMARY

Ahtna is entitled to summary judgment as follows:

1. Plaintiff is owner of the land in question;
2. Plaintiff's action is not barred by the statute of limitation;
3. The defendant's claim of adverse possession is without merit;
4. The defendant is not a valid owner and occupier of the land pursuant to § 14(c)(1) or any other provision of ANCSA.;
5. The defendant's affirmative defense based on the doctrine of laches is without merit;
6. The complaint states a cause of action.
7. Summary judgment is appropriate granting Plaintiff judgment as prayed for including the requested injunctive relief barring defendant Heinz from further use of the lands involved, and awarding Ahtna damages.
8. The court is requested to set a date for a hearing on damages.
9. The Plaintiff should be awarded all costs and fees for having to bring this action.

Dated this 3th day of February, 2008 at Anchorage, Alaska.

J. Michael Robbins, Esq., ABA # 7606068
Attorney for Plaintiff Ahtna, Inc

406 W. Fireweed Ln., #103<br>
Anchorage, AK  99503<br>
P:  (907) 868-8204<br>
F:  (907) 868-8265<br>
mrobbins@ahtna.net

## CERTIFICATE OF SERVICE

I, J. Michael Robbins, Esq., on February 8, 2007, A copy of the foregoing was served electronically on:

David Clark at dclark@lawddc.com
Attorney for Defendant Heinz

_____/s/_____
J. Michael Robbins